```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
ZWADIE NICHOLS                            :
                                          :
                    Petitioner,           :    10 CV 3852 (KBF)
                                          :
        -v-                               :    MEMORANDUM OPINION
                                          :        AND ORDER
JAMES CONWAY, Superintendant, Attica      :
Correctional Facility State of New        :
York,                                     :
                    Respondent.           :
                                          :
------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Zwadie Nichols ("petitioner") filed this pro se petition for a writ of habeas corpus (the "petition") pursuant to 28 U.S.C. § 2254 in May 2010. The petition was fully briefed as of March 21, 2012. Petitioner alleges that there were various constitutional infirmities at his trial and that he is therefore being held in state custody in violation of his constitutional rights.

Petitioner's claims relate to his conviction on March 17, 2005, by a jury sitting in New York County Supreme Court, of Rape in the First Degree (Penal Law § 130.35(1)), two counts of Sexual Abuse in the First Degree (Penal Law § 130.65(1)), and Attempted Sexual Abuse in the First Degree (Penal Law §§ 110.00/130.65(1)). He was sentenced as a second violent felony offender to concurrent, determinate prison terms of 25

years with 5 years of post-release supervision on the rape count, 7 years on each sexual abuse count, and a concurrent indeterminate prison term of 2 to 4 years on the attempted sexual abuse count.

On October 16, 2008, the Appellate Division, First Department, unanimously affirmed the judgment of conviction and on January 15, 2009, the New York Court of Appeals denied petitioner's application for leave to appeal. People v. Nichols, 55 A.D.3d 380 (1st Dep't 2008), lv denied, 11 N.Y.3d 928 (2009).

For the reasons set forth below, the petition is denied in its entirety.

I. FACTUAL BACKGROUND

This Court recites only the facts necessary to resolution of the instant petition. Additional factual background can be found in the submissions in briefs on this petition, found at docket numbers 2 and 12.

On January 19, 2003, petitioner and complainant, a woman with the initials M.B., encountered each other at a crowded Port Authority Bus Terminal in New York City. Petitioner claims that complainant agreed to exchange sex for money and she therefore went willingly with him to a hotel; complainant asserts that petitioner asked her to exchange sex for money, she said no, he then threatened her, said he had a gun, and forced her to

accompany him to the hotel.  It is undisputed that the two then went to a hotel where there was physical contact.  To get to the hotel, petitioner and complainant had to pass large numbers of people, including police.  Petitioner and complainant disagree as to whether complainant went willingly to the hotel.

There is also significant disagreement as to both whether, once at the hotel, the physical contact that occurred there was consensual and the extent of that contact.  Petitioner conceded that he kissed complainant's neck; complainant testified she was raped.

Complainant sought medical attention shortly after the incident--e.g., DNA samples were taken from her neck and clothing.  Complainant was met at the hospital by police. Apparently two officers initially interviewed her and one stated, "Get your story straight," and asked whether she really wanted to pursue her case.  A few days later the complainant decided not to pursue her case.  In September, 2003, the police matched the DNA from the neck swab taken from complainant with the petitioner's DNA.  The case against petitioner based on the January 2003 incident, which had been closed, was reopened; the complainant cooperated with the police and a lineup was arranged.

On the evening of the lineup, someone from a lawyer's office contacted the station house indicating that petitioner

3

had retained counsel.  The detective conducting the lineup attempted to get in touch with the lawyer for a little over an hour.  When he was unsuccessful, he conducted the lineup at which complainant identified petitioner.

During his initial interview with the police, petitioner stated that he "sometimes felt that he was marked as a pimp" but that "the real pimps ... have money and have cars and have jewelry."  He also told the police that if he could get "these bitches to work" for him then he would have money and other things.  Petitioner told one of the interviewing officers that on one occasion he had shouted out of a window to a woman, "Bitch, you don't work for me, I'll kill you."

Petitioner claims that prior to trial he requested an opportunity to present evidence to the grand jury, but he was denied that opportunity.  He also claims that his statement "Bitch, you don't work for me, I'll kill you" was introduced during his cross examination; that during summations the prosecutor (i) likened the case to a bank robbery in which a note is handed to a teller but everyone around thinks it's just another transaction, (ii) alluded to another case by saying, "Who would think that their hair dresser could get gunned down on 57th street and Madison on a week night," and (iii) referred to "Kitty Genovese screaming for help" (presumably trying to evoke the memories of people who recalled that people apparently

4

heard Ms. Genovese scream and did not respond). All of those comments were in response to a defense presentation that made a significant point out of the unlikelihood that the petitioner could have threatened the complainant and forced her to accompany him several blocks to a hotel when they were in a crowded bus terminal.

At the trial, counsel did not request, and the trial court did not give, a missing witness charge relating to the officers who initially interviewed the complainant.

II. DISCUSSION

  A. THE PETITION

Petitioner makes six arguments in support of his petition:

1.  that his constitutional right to counsel was violated when the police placed him in a lineup without his counsel present;

2. that the prosecutor improperly introduced evidence of uncharged crimes;

3.  that the prosecutor made a series of improper remarks during her summation;

4.  that he was deprived of his right to a fair trial when the court failed sua sponte to include a missing witness charge;

5.  that he was denied his right to testify before the grand jury; and

6. that he was denied effective assistance of counsel when his attorney failed (i) to object to the prosecutor's improper comments made during the summation, (ii) to request a missing witness charge, (iii) to present evidence to discredit the DNA evidence presented by the prosecution, and (iv) to call as witnesses police officers who did initial interviews with the complainant.

B. STANDARD OF REVIEW

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214. A portion of that statute directly impacted the standard that a petitioner for federal habeas relief must meet. The AEDPA "precludes a federal court from granting a writ of habeas corpus to a state prisoner unless the state court's adjudication of his claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Wetzel v. Lambert, 132 S.Ct. 1195, 1198 (2012) (quoting 28 U.S.C. § 2254(d)(1)). In Harrington v. Richter, 131 S.Ct. 770 (2011), the Supreme Court held that under § 2254(d), a "habeas court must determine what arguments or theories supported ... the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments

or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. In the same decision, the Supreme Court made it clear that this standard is difficult to meet. Id.; see also Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Federal courts are instructed to be highly deferential to state court rulings and to give those rulings the benefit of the doubt. Cullen, 131 S.Ct. at 1398 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

The Second Circuit has reminded federal courts that when they are reviewing state court convictions, they are engaging in collateral review only--and that direct review is the principle avenue for challenging a conviction. See Bentley v. Scully, 41 F.3d 818, 823-24 (2d Cir. 1994). In Bentley, the Second Circuit stated that, as a result, the role of federal habeas relating to state court convictions is secondary and narrow--success on such a petition is limited to grievous wrongs. Id. at 824 (quoting Brecht v. Abrahamson, 507 U.S. 619, 633 (1993)). The Supreme Court has stated that "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Brecht, 507 U.S. at 634 (quotation marks omitted).

"Consistent with the greater deference accorded to a final state court judgment on collateral federal review," petitioner is not entitled to habeas relief on trial error unless he can

7

establish that it resulted in actual prejudice. Bentley, 41 F.3d at 824; see also Brecht, 507 U.S. at 637. Habeas relief is not appropriate where there is merely a reasonable possibility that trial error contributed to the verdict. Brecht, 507 U.S. at 637; Bentley, 41 F.3d at 824.

C. EXHAUSTION

As a threshold matter, in order to obtain federal habeas relief, petitioner must have sought and exhausted all avenues of state court relief for each of the bases he raises here. Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981). Petitioner has exhausted his state court review possibilities for some, but not all, of his claims.

Petitioner presented to the Appellate Division his claims relating to the lineup procedure, the prosecutor's summation remarks, the failure of the court to give a missing witness charge and the introduction of uncharged crimes. The Appellate Division found that petitioner had not preserved his arguments concerning the prosecutor's summation and the absence of a missing witness charge, but as an alternative decided that those arguments failed on the merits. Nichols, 55 A.D.3d at 381.

Petitioner did not, however, exhaust his state review remedies relating to his claims based on ineffective assistance of counsel. While petitioner did raise that issue on appeal to the Appellate Division, the Appellate Division determined that

8

it was not reviewable because the underlying conduct involved matters of strategy outside of the record. Id. This Court therefore declines to review petitioner's ineffective assistance of counsel claim.

Petitioner also failed to raise any claim regarding a lack of opportunity to testify before the grand jury. That claim is therefore also not properly before this Court.

D. PETITIONER'S CLAIMS

1. Failure to Have Counsel at the Lineup

Petitioner claims that prior to the lineup identification process, someone from his counsel's office had called the station house such that it was clear that petitioner was represented by an attorney. Petitioner contends that the failure to delay the lineup until counsel could be present deprived him of his constitutional rights. This Court disagrees.

The law is clear that the constitutional right to have counsel present attaches when an adversary judicial proceeding has been commenced. Kirby v. Illinois, 406 U.S. 682, 688 (1972); Powell v. Alabama, 287 U.S. 45, 68-69 (1932). An investigatory lineup has been held not to be such a proceeding under New York law, Collins v. Scully, 878 F.Supp. 452, 457 (E.D.N.Y. 1995) (holding that adversarial proceedings in New York are "commenced by the filing of an accusatory instrument

with the criminal court" and thus "there is no right to counsel at an investigatory lineup"), and hence, failure to wait until counsel arrived could not have deprived petitioner of a fundamental constitutional right. See Kirby, 406 U.S. at 688-89 (holding that the right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information or arraignment").

In addition, given the DNA evidence that linked petitioner to the complainant, and the petitioner's own agreement that he had kissed the complainant, identification was never truly in dispute. See Nichols, 55 A.D. 3d at 381. Thus, any infirmity in the identification process, if there was one, could not have caused any significant prejudice. See Bentley, 41 F.3d at 824. There is no basis to differ from the decision of the Appellate Division with respect to this issue.

### 2. Uncharged Crime

Petitioner argues that it was constitutional error for the trial court to admit, over objection, his pre-trial statement to police officers that he had said on a prior occasion, to another woman, "Bitch, if you don't work for me I'll kill you." Petitioner claims that admission of that statement was an inappropriate admission of an uncharged crime.

10

This issue was raised on appeal and found not to have merit. Nichols, 55 A.D. 3d at 381. At the trial, petitioner attacked the complainant's credibility and essentially accused her of agreeing to an exchange of money for sex. He also attempted to show that he was not the type of person who would threaten a woman who turned him down. Id. at 380-81. The Appellate Division agreed with the trial court that the evidence helped to demonstrate that complainant's version of events was plausible because it showed that petitioner had behaved in the same manner on a prior occasion. Id. at 381. The trial court also found, and the Appellate Division agreed, that "[h]ad the People been prohibited from introducing that evidence, and thus explaining that it was credible that [petitioner] would act in an abnormal manner, [petitioner] would have been unfairly able to exploit the bizarreness of his acts." Id. (quoting People v. Johnson, 196 A.D.2d 449, 452 (1st Dep't 1993), lv denied 82 N.Y.2d 850 (1993)). This Court cannot find that this evidentiary ruling, affirmed on direct appeal, meets the threshold necessary for federal habeas relief. See Bentley, 41 F.3d at 824.

### 3. Summation Misconduct

Petitioner has alleged that the prosecutor made a variety of comments during the summation that prejudiced his ability to get a fair trial. There is no allegation that the prosecutor's

11

misconduct permeated the trial itself, though. See Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990) (finding that "the prosecutor's improper behavior, limited as it was to the summation, did not permeate the trial"). There has been no showing that the cumulative effect of these comments was so inflammatory or egregious as to require a finding of substantial prejudice. See id. This Court cannot find that this conduct, which the Appellate Division rejected as a basis for relief of direct appeal, id. at 382, meets the threshold necessary for federal habeas relief. See Bentley, 41 F.3d at 824.

### 4. Court's Failure to Give a Missing Witness Charge

Petitioner claims that the trial court should have given a "missing witness" charge to the jury regarding the officers who initially interviewed the complainant. Petitioner asserts that those officers made statements to the complainant that evidenced their disbelief in her version of the events and therefore calling them would have had adduced testimony that bolstered his version.

The adequacy of a court's instructions to the jury is a matter of state law. See Cupp v. Naughten, 414 U.S. 141, 146 (1973). The trial court's failure to give a missing witness charge does not present a federal constitutional claim because it has not been shown that failure to do so rendered the trial fundamentally unfair. See id. Here, there is no evidence that

12

petitioner himself sought to call the officers, or that even if the officers had testified as he claimed they would, that the testimony would have resulted in a different outcome given the overwhelming evidence of guilt.

## CONCLUSION

The petition for habeas corpus is denied.

In addition, the Court declines to issue a certificate of appealability. Petitioner has not made a substantial showing of a denial of a federal right pursuant to 28 U.S.C. § 2253(c), and appellate review is therefore not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).

The Court also finds pursuant to 28 U.S.C.A. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962).

The Clerk of Court shall close the case.

SO ORDERED:

Dated: New York, New York
       June 11, 2012

       _____
       Katherine B. Forrest
       United States District Judge

Copies to:

All counsel (via ECF)

Mr. Zwadie Nichols
DIN# 05-A-1888
Clinton Correctional Facility
1156 Rt. 374
P.O. Box 2001
Dannemora, New York 12929-2000